IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

KENNETH J. BELL,

                    Plaintiff,

          vs.                              **Case No. 08-4016-RDR**

MICHAEL J. ASTRUE,
Commissioner of Social
Security,
                    Defendant.

---

### MEMORANDUM AND ORDER

Plaintiff has filed applications for social security disability benefits and supplemental security income benefits. Plaintiff alleges an onset date of March 1, 2004. The applications were denied by defendant on the basis of the August 8, 2007 opinion of an administrative law judge (ALJ). This case is now before the court to review defendant's decision to deny benefits.

I. STANDARD OF REVIEW

The court reviews defendant's decision to determine whether the decision was supported by substantial evidence and whether the correct legal standards were applied. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is such evidence that a reasonable mind might accept to support the conclusion. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on

that basis decide if substantial evidence supports the defendant's decision.   Glenn, 21 F.3d at 984.   The court may not reverse the defendant's choice between two reasonable, but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo.   Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

II.   ALJ DECISION (Tr. 21-36).

There is a five-step evaluation process followed in these cases.   First, it is determined whether the claimant is engaging in substantial gainful activity.   Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."   At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.   Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.   Finally, at the last step of the sequential evaluation process the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In this case, the ALJ decided plaintiff's applications should be denied on the basis of the fourth and fifth steps of the

2

evaluation process.  The ALJ decided that plaintiff maintained the residual functional capacity to perform his previous occupation as a registered nurse and that he could perform a wide range of medium, light and sedentary unskilled employment.

More specifically, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability, although he did work through June 2004.  He determined that plaintiff has the following "severe" physical impairments:  soft tissue injury to the neck and hepatitis C.

According to the ALJ, plaintiff retained the residual functional capacity (RFC):

> to perform work which requires lifting or carrying up to 50 pounds occasionally and up to 25 pounds frequently, sitting about 6 hours of an 8 hour day, and standing or walking about [6] hours of an 8 hour day.  Pushing and pulling restrictions are the same as for lifting and carrying.  Thus, [plaintiff] can engage in work at the medium exertional level. [Plaintiff] has nonexertional limitations precluding all rope, ladder, and scaffold climbing, and more than frequent stair climbing, balancing, stooping, kneeling, crouching, and crawling. He must restrict overhead reaching due to chronic neck and shoulder pain.  He has no visual, communicative, or environmental limitations.

(Tr. 27).

The ALJ further found that plaintiff was "only partially credible regarding his symptoms and limitations." (Tr. 31).  He based this conclusion upon reports of plaintiff doing physical activities, inconsistencies between statements made regarding the effectiveness of treatment, contradictions between plaintiff's

statements and the record, and the lack of objective findings throughout the record.

## III. PLAINTIFF'S PERSONAL HISTORY

Plaintiff has served in the United States Navy. While performing maintenance duties during blackout conditions aboard an aircraft carrier in the Mediterranean Sea in 1979, plaintiff fell some distance, striking a pipe which supported netting that prevented plaintiff from landing in the water. Plaintiff's condition has been traced at least in part to this accident by some authorities in the record.

Plaintiff worked as a nurse for approximately 14 years prior to the alleged onset of his disability.

## IV. ARGUMENTS

The first argument listed in plaintiff's opening brief is that the ALJ erred in failing to find that plaintiff's depression was a "severe" impairment.

The Tenth Circuit has held that as long as the ALJ finds that a claimant has any severe impairment, then there is no reversible error per se in finding that a particular impairment is not severe. Hill v. Astrue, 2008 WL 3339174 at *2 (10th Cir. 2008) (citing Oldham v. Astrue, 509 F.3d 1254, 1256-57 (10th Cir. 2007)); see also, Carpenter v. Astrue, 537 F.3d 1264, 1265 (10th Cir. 2008) (any error at step two of the sequential analysis is harmless if the ALJ reaches proper conclusion that claimant could not be denied

benefits at step two).  The ALJ is merely required to perform the remaining steps of the analysis correctly, and these steps may include determining whether the effect of <u>all</u> of the claimant's medically determinable impairments, "severe" and "non-severe," renders plaintiff disabled from all substantial gainful employment.

In this case, at step two of the sequential analysis, the ALJ found that plaintiff suffered from a severe physical impairment, but not a severe mental impairment.  The issue for the court is whether the ALJ performed the remaining steps of the analysis correctly.  Plaintiff does not contend that the ALJ's approach was flawed with regard to step three of the sequential analysis.  As for step four, the Tenth Circuit has noted that there are three phases to step four of the sequential analysis.

> In the first phase, the ALJ must evaluate the claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.  At each of these phases, the ALJ must make specific findings.

<u>Frantz v. Astrue</u>, 509 F.3d 1299, 1303 (10th Cir. 2007) quoting, <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted).

Within this legal and analytical framework, we believe plaintiff makes the following arguments for our review:  1) that the ALJ ignored or disregarded important evidence regarding

plaintiff's mental status; 2) that the ALJ failed to properly credit and evaluate the opinion of plaintiff's treating psychiatrist and the opinion of an examining psychologist; 3) that the ALJ failed to properly evaluate plaintiff's credibility; and 4) that the ALJ's RFC analysis at step four was flawed and not supported by substantial evidence.

A.   <u>Review of the entire record as to plaintiff's mental status</u>

The ALJ engaged in a lengthy discussion of plaintiff's mental status which the court will attempt to summarize.  The ALJ noted that in September 2004, plaintiff was diagnosed as having an adjustment disorder with anxiety but assigned a GAF of 65, "indicating only mild symptoms" in the opinion of the ALJ.  (Tr. 24).  He noted at that time plaintiff denied depressive symptoms and declined antidepressant medication.

The ALJ made reference to plaintiff's evaluation by Dr. Stanley Mintz on December 13, 2004.  During the evaluation, plaintiff denied depressive or anxiety symptoms.  According to the ALJ, Dr. Mintz gave a diagnosis of PTSD, "but also assigned a GAF of 65 reflecting mild symptoms."  (Tr 24).

Not long thereafter, on January 3, 2005, plaintiff visited the VA hospital and said he had the worst case of PTSD ever.  But, VA sources determined in April 2005 that plaintiff did not meet the diagnostic criteria for PTSD.  Plaintiff was diagnosed with

depressive disorder not otherwise stated, secondary to chronic pain. A similar diagnosis was rendered at the VA on June 9, 2005. Plaintiff was assigned a GAF score of 70.

The ALJ also discussed a post-hearing mental evaluation by Dr. Jamie Ryder. The ALJ described the results of the evaluation as follows:

> [Plaintiff] described isolative behavior, flashbacks and nightmares of his injury in the military service, panic attacks, poor anger control, rapid mood changes, difficulty getting along with others, and spending days in bed due to pain. He appeared angry and frustrated during the evaluation, but did not exhibit any difficulty with attention, concentration, memory, intellectual functioning, abstract reasoning, or judgment. WAIS-III testing revealed a Verbal IQ of 97, a Performance IQ of 78, and a Full Scale IQ of 88. However, [plaintiff] did not exhibit full effort during testing. MMPI-2 testing was invalid because [plaintiff] failed to answer 166 questions. Dr. Ryder noted contradictions between the test and examination results and stated that [plaintiff's] overall intellectual abilities were average.

(Tr. 24).

The ALJ then discussed the four broad functional areas set out in the disability regulations for evaluating mental disorders. The ALJ found that plaintiff exhibited no more than "mild restrictions" in the functional area of activities of daily living. (Tr. 25). He noted that plaintiff told Dr. Mintz that he cooked, cleaned and shopped and that he hunts, fishes and helps his parents on their farm. (Tr. 25).

In the area of social functioning, the ALJ concluded that plaintiff "has no limitation." (Tr. 25). After stating this

conclusion, the ALJ discussed various pieces of contrary evidence. For instance, plaintiff asserted that he stayed in his house for two years after a verbal altercation outside his house with a water meter reader.  The ALJ thought that this was not credible in view of medical notes showing that defendant was active outside with running, working at his parents' farm, and shopping.  The ALJ also referred to various notes indicating that plaintiff had a calm or friendly demeanor, and to other notes or testimony from plaintiff showing that plaintiff had worked reasonably well with co-workers and supervisors in the past.  These notes led the ALJ to question the significance of various incidents which are referred to in the record:  e.g., when plaintiff became threatening and agitated after VA personnel refused to change treatment notes regarding plaintiff's running routine; when plaintiff threatened harm to others in July 2006 after he encountered resistance to a demand for medications; when he became agitated after he was denied use of a truck by his father; and when he was irritable or angry with Dr. Ryder or other mental health sources.  The ALJ also acknowledged the testimony of plaintiff's mother that plaintiff had problems getting along with other people.  Nevertheless, the ALJ found that plaintiff had demonstrated adequate control of himself and consequently exhibited, "no problem maintaining social function-ing."  (Tr. 25).

As to the third functional area of concentration, persistence

8

or pace, the ALJ noted testimony from plaintiff and his mother that plaintiff had a poor memory.  The ALJ was more persuaded by the results of mental status evaluations and other statements from plaintiff indicating that plaintiff had no particular problems in the areas of memory, fund of knowledge, judgment and insight. Therefore, the ALJ determined that plaintiff "has no difficulty maintaining concentration, persistence, or pace." (Tr. 26).

Regarding the final area of mental functioning, the ALJ concluded that plaintiff "has not experienced any episodes of decompensation." (Tr. 26).  In making this finding, the ALJ found that testimony from plaintiff and his mother about "an episode of unawareness" was not credible because it was not medically confirmed and because plaintiff generally was not credible.

Plaintiff contends that the ALJ ignored or disregarded evidence contrary to his holdings.  This evidence is summarized by plaintiff's counsel at pages 15-17 of plaintiff's opening brief. Doc. No. 9.  It includes references in the record from June 2004 through June 2007 of depressive symptoms, diagnoses of depression, and the administration of medication for depression.  It also includes references to the reports of Dr. Alexander and Dr. Ryder as well as a discussion of various incidents in which plaintiff demonstrated anti-social traits.  Upon our review of the record and the ALJ's lengthy opinion, we do not believe that the ALJ overlooked or disregarded this evidence.  He acknowledged that

9

plaintiff had been diagnosed with depression, had displayed depressive symptoms, and was prescribed medication for depression. The ALJ also discussed certain incidents of anti-social behavior as well as the reports of Dr. Alexander and Dr. Ryder.  We believe the ALJ fulfilled his duty to assess plaintiff's RFC on the basis of all of the relevant evidence in the record.  See 20 C.F.R. § 404.1545(a).

B.   Evaluation of Dr. Alexander and Dr. Ryder's opinions

1.  Dr. Alexander

Plaintiff asserts that the ALJ erred by failing to give controlling weight to the medical opinion of plaintiff's treating psychiatrist, Dr. Shirley Alexander.   Dr. Alexander noted, following a visit with plaintiff on January 22, 2007, that she did not see how plaintiff could have gainful employment with his physical problems or with his level of depression and agitation. (Tr. 389).  She maintained plaintiff on depression medications (Zoloft and Remeron) and offered inpatient hospitalization which plaintiff "adamantly decline[d], saying he is not psychotic & also doesn't see what they can do for him on a short term basis." (Tr. 390).  Dr. Alexander at that time also assigned a GAF score of 44. The record shows similar comments and the same GAF score from Dr. Alexander after a September 18, 2006 visit (Tr. 394-96), as well as similar comments after a visit on June 11, 2007.  (Tr. 530-31).

The ALJ assigned no weight to Dr. Alexander's comments with

10

the following explanation:

> Dr. Alexander did not record any objective findings in regard to this opinion.   It appears based solely upon [plaintiff's] subjective reports of symptoms, which have been shown to be not credible.  Dr. Alexander had only begun treating [plaintiff] since October, 2006.  She is not qualified to evaluate [plaintiff's] physical impairments.   This opinion is not supported by her objective findings and thus not entitled to controlling weight.   Considering Dr. Alexander's short treatment history with [plaintiff] and the medical findings of other VA and consultative sources, Dr. Alexander's opinion is not supported by the evidence of record. Thus, no weight has been given to any part of this opinion.

(Tr. 32).

Upon review, we believe that the ALJ's analysis of Dr. Alexander's records followed the law and is adequately supported in the record.  The regulations suggest that a treating source will generally be given less weight if the claimant has not seen the treating source very many times.  20 C.F.R. § 416.927(d)(2)(ii). The administrative record indicates that Dr. Alexander saw plaintiff in September 2006, in January 2007 and in June 2007, which was after the first administrative hearing.  The record also indicates that information developed during visits or phone calls by plaintiff to the VA Medical Center as early as 2004 was sometimes referred to Dr. Alexander.   The court believes it was proper for the ALJ to consider Dr. Alexander's limited treatment history with plaintiff in considering what weight to give her opinion.  The regulations also warrant the ALJ's consideration of: Dr. Alexander's lack of qualifications to evaluate plaintiff's

11

physical impairments (§ 416.927(d)(2)(ii) & (d)(5)); the absence of medical signs and laboratory findings to support the opinion (§ 416.927(d)(3)); and the consistency or lack of consistency with the record as a whole (§ 416.927(d)(4)).   See also, Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (listing factors used to evaluate a treating source opinion).

Plaintiff argues that it was improper for the ALJ to speculate that Dr. Alexander's opinions were based on plaintiff's subjective complaints.   This "speculation" appears reasonable to the court. The records indicate that Dr. Alexander's comments were based at least in part on plaintiff's complaints to Dr. Alexander and to others.   However, this is not unusual for a psychiatrist.   See Miranda v. Barnhart, 205 Fed.Appx. 638, 2005 WL 4888068 (10th Cir. 2005) ("the practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements"); Thomas v. Barnhart, 147 Fed.Appx. 755, 2005 WL 2114163 (10th Cir. 2005) (same).   In part because the ALJ determined that plaintiff's subjective reports of symptoms were not credible, he gave no weight to Dr. Alexander's opinion.   As the court will discuss later, we find the ALJ's judgment regarding plaintiff's credibility to be supported by good reasons.   For this reason and because the ALJ's dismissal of Dr. Alexander's opinion is supported by other factors, we will not fault the ALJ's criticism of Dr. Alexander's opinion for being based on plaintiff's subjective complaints.

2.  <u>Dr. Ryder</u>

Dr. Ryder was not a treating physician.  She was an examining psychologist who did an evaluation of plaintiff on May 24, 2007. (Tr. 486-91).  Dr. Ryder found no impairment in concentration, short-term memory, or long-term memory.  Plaintiff's test results were not always consistent with these findings, but Dr. Ryder noted that plaintiff gave inconsistent effort on the tests.  Plaintiff's intellectual abilities were considered average to low-average.  His ability to concentrate or give sustained attention to tasks was viewed to be unimpaired on the basis of plaintiff's interview. Again, contrary indications from the tests may have been affected by plaintiff's effort during the tests.  Dr. Ryder found that plaintiff's greatest impairment involved his interactions with other people:

> Capacity to interact appropriately with supervisors, co-workers, and the general public is considered impaired due to anger management problems and difficulty relating with others.  Taking instructions or working successfully with others is considered by his report to be impaired. [Plaintiff] displayed inadequate social behavior during this evaluation, suggesting inadequate ability to interact appropriately with coworkers and supervisors within a work environment, such as accepting instructions from supervisors and responding appropriately to criticism from supervisors. [Plaintiff] would likely not be able to get along with coworkers without unduly distracting them or exhibiting behavioral extremes. Similarly, [plaintiff] likely does not have the potential to interact appropriately with the general public based on his self-report of anger control problems around others. [Plaintiff's] capacity to tolerate stress and pressure of simple, unskilled work, and to respond appropriately is estimated to be mild to moderately limited.   Poor  social  judgment  or  decision-making

> suggested. [Plaintiff] might be unable to respond
> appropriately to changes in routine work setting.
> Keeping a regular work schedule and being punctual with
> customary tolerances may be a problem area for
> [plaintiff].

(Tr. 491).

Dr. Ryder completed a medical source statement which showed

that plaintiff suffered from marked limitations in his abilities:

to interact appropriately with the public; to interact

appropriately with supervisors; to interact appropriately with co-

workers; to respond appropriately to work pressures; and to respond

appropriately to changes in the routine work setting. (Tr. 494).

She supported these findings with the following comments:

> [Plaintiff] shows a history of not getting along well
> with others and appears to become quite agitated at times
> when interacting with others. There is evidence in his
> treatment record of him being escorted out of a medical
> clinic because of his agitation. He appears to have
> difficulty adjusting to change and criticism. It would
> appear that [plaintiff] would experience marked
> difficulty in getting along with co-workers and
> supervisors.

(Tr. 494).

The ALJ dismissed these findings stating:

> Dr. Ryder stated that [plaintiff] did not exert good
> effort during testing, making the results invalid, and
> admitted that it was to his benefit to do poorly rather
> than his best. Furthermore, most of the limitations
> cited by Dr. Ryder are based upon [plaintiff's] self
> reports, which the undersigned finds are not credible for
> reasons discussed above. Therefore, substantial weight
> has not been given to the opinions expressed by Dr.
> Ryder, although her objective examination findings have
> been incorporated into the residual functional capacity.

(Tr. 33).

Plaintiff contends that the ALJ improperly evaluated Dr. Ryder's work. But, plaintiff's criticism of the ALJ appears to boil down to the fact that the ALJ did not adopt Dr. Ryder's findings. Plaintiff asserts that the ALJ did not explain the weight given to Dr. Ryder's opinion; that the ALJ may not pick and choose from a medical opinion only those parts favorable to a finding of nondisability; and that the ALJ may not ignore uncontroverted evidence that he chooses not to rely upon.

The court does not believe these criticisms hit the mark. The ALJ gave an explanation for rejecting some of Dr. Ryder's findings and for not giving "substantial weight" to her opinions while incorporating Dr. Ryder's "objective examination findings." This explanation was that Dr. Ryder's conclusions regarding plaintiff's limitations in interacting with others were not based upon objective tests, but upon incidents related by plaintiff or contained in medical records which the ALJ found to be of little significance or believability. Therefore, the ALJ was not picking and choosing from Dr. Ryder's report without some basis for doing so. Similarly, the ALJ did not ignore the findings in Dr. Ryder's report which were unfavorable to a finding of nondisability. He mentioned those findings and stated why he believed those findings did not deserve substantial weight. The ALJ's reasoning was based largely upon his credibility analysis which is the next argument to be discussed.

C.  Credibility

Plaintiff has asserted that the ALJ's credibility finding was incorrect.

The ALJ discussed facts which he believed were relevant to credibility at considerable length.  The following are some of the facts the ALJ mentioned which led him to find that the intensity, persistence and limiting effects of plaintiff's symptoms were not entirely credible.  Plaintiff was physically active, at least in 2004 and 2005.  He jogged, worked out on weight machines, hunted, fished, worked on his parents' farm, painted his house, and mowed his yard.  Plaintiff also applied for a crossbow permit in 2004. In 2006, he said that he had stopped jogging in 2004 and was now walking one mile a day.  In January 2007, he stated that this was the first winter that he did not feel physically well enough to catch or hunt his food.

The ALJ noted that these statements contradicted other statements by plaintiff which indicated, for instance, that in May 2005 pain prevented him from doing most activities and that he had not been able to hunt or fish for 14 months.

The ALJ noted that plaintiff claimed that various medications, including Valium, impaired his memory and made him feel like he was walking in mud.  According to plaintiff he had to balance the need to mitigate his pain with the need to maintain a clear mind to take care of his affairs.  The ALJ found that these statements were

16

inconsistent with the results of various mental status evaluations which found that plaintiff's memory, concentration and attention were adequate.

The ALJ further noted that plaintiff reported an angry altercation with a neighbor on March 15, 2004, but did not mention this altercation to Dr. Mintz on December 13, 2004 during a mental health evaluation or mention it to other VA mental health sources until May 11, 2005.  The ALJ found that plaintiff's alleged fears of leaving the house were inconsistent with his hobbies of running, hunting and fishing.  He further commented that although plaintiff reported panic attacks to Dr. Ryder, plaintiff denied having panic attacks when he spoke to other mental health professionals.

The ALJ noted that plaintiff had a good work history from 1991 to 2004.  This seems inconsistent with his claim of being unable to get along with other people.  Plaintiff's former wife also indicated that plaintiff never lost a job because of an inability to get along with others.  Although plaintiff's former wife also stated in May 2005 that plaintiff experienced difficulty with sitting, standing, walking, completing tasks and with social functioning, the ALJ felt that this description was inconsistent with the medical evidence from that period of time.

The ALJ also relied upon the mental health records from Dr. Mintz, who assigned a GAF score of 65 to plaintiff.  He cited another evaluation in July 2005 which assigned a GAF score of 70 to

plaintiff.   (Tr. 442).   This evaluation by Dr. Gary Fast also indicated that plaintiff reported considerable improvements after receiving medication for depression.   (Tr. 443).   Plaintiff was described as cooperative, friendly, relaxed and attentive.   (Tr. 439).   Plaintiff reported to Dr. Fast that he was "able to develop and maintain long term relationships and has several close long term friends." (Tr. 436).   The ALJ's credibility analysis further relied upon notations in the record which suggested malingering, drug-seeking behavior, and a focus upon obtaining disability benefits.

Plaintiff cites evidence contrary to the conclusions of the ALJ, such as the remarks of a Social Security Administration employee who conducted a telephone interview with plaintiff and wrote that plaintiff had a really bad memory (Tr. 115), and evidence that plaintiff appeared drowsy during tests administered in connection with Dr. Ryder's evaluation.   (Tr. 489).

Credibility is an issue which is generally reserved to the judgment of the ALJ.   Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).   However, the ALJ is required to closely and affirmatively link his credibility findings to substantial evidence and not to make a broad conclusion in the guise of a credibility finding.   Id.   The record in this case is not completely one-sided. Hence, it was necessary for the ALJ to make distinctions on the basis of credibility or other reasons.   The court believes that the

ALJ's credibility findings are supported by specific and substantial evidence in the record.

This includes the ALJ's findings regarding plaintiff's head and neck movements.  The ALJ found that:

> [Plaintiff] did not demonstrate any guarding of his neck or upper body even though he testified to experiencing pain and muscle spasms.  Instead he would twist his head and neck and push it forward and bend his head towards his shoulders with his hands in a very exaggerated manner.  He testified this was jerking due to spasms but no involuntary jerking was observed prior to these exaggerated stretching-type motions again raising questions as to his credibility.

(Tr. 34).  While plaintiff criticizes the ALJ for an improper "sit and squirm" analysis (Doc. No. 9 at p. 22), we agree with defendant that the ALJ may consider his personal observations in addition to the other evidence in the record when evaluating plaintiff's credibility.  See Qualls v. Apfel, 206 F.3d 1368, 1373 (10th Cir. 1992).  We would also note that although Dr. Ryder mentioned that plaintiff exhibited restlessness and discomfort during his interview, she did not mention involuntary jerking.  In addition, Dr. Ryder's report stated under the caption of "Credibility" that plaintiff's "report throughout the interview seemed inconsistent with his observed behavior." (Tr. 488).  Plaintiff notes that a chiropractor, Dr. Bumgarner, has a letter in the record which supports the existence of spasms which cause jerking and twitching sensations.  (Tr. 330).  The ALJ considered this evidence but obviously discounted it because of the absence of other supporting

medical evidence.  (Tr. 32).

Plaintiff makes the additional argument that the ALJ should not have given substantial weight to the refusal of a VA nurse practitioner (Darrel Mourning) to complete a disability form for plaintiff.  Plaintiff asserts that there is no explanation in the record as to why the form was not completed.  The court has noted other cases in which a medical provider's refusal to fill out a disability form was considered a relevant point.  <u>Blountt v. Commissioner of Social Security Administration</u>, 2008 WL 3911388 (D. Minn. 2008); <u>Haynes v. Astrue</u>, 2008 WL 544853 (M.D.Fla. 2008).  We see no error here by the ALJ.

In summary, there is evidence which may be argued in support and in opposition to plaintiff's claim for benefits.  The court believes that the ALJ made a strong effort to discuss this evidence and to link his findings on credibility and other issues to substantial evidence.  The ALJ did not discuss every piece of evidence, such as the observation of the SSA employee during a telephone interview.  (Tr. 115 - indicating that plaintiff had trouble answering all questions and that his memory was "really bad").  But, the ALJ has no duty to discuss every piece of evidence, particularly if the evidence is controverted and not significantly probative.  <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

D.  <u>SSR-82-62 and the Step Four Analysis</u>

Plaintiff asserts that the ALJ violated Social Security Ruling 82-62 when he failed to describe the physical or mental demands of plaintiff's past relevant work.  This argument concerns step four of the sequential analysis.  As noted previously in this order, during the step four analysis the ALJ must complete three phases:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

<u>Doyal v. Barnhart</u>, 331 F.3d 758, 760 (10th Cir. 2003) (quoting <u>Winfrey v. Chater</u>, 92 F.3d 1017 (10th Cir. 1996)).  Plaintiff contends that the ALJ did not properly perform the second phase.

The ALJ made a finding based upon plaintiff's testimony and "other evidence of record" that plaintiff's past relevant work constituted "skilled work generally performed at the light exertional [level]." (Tr. 34).  Therefore, it appears to the court that the ALJ made the kind of specific findings required by the law.  Cf., <u>Doyal</u>, 331 F.3d 760-61 (second phase findings deemed adequate where ALJ recounts vocational expert's testimony that claimant's past relevant work would be classified as light and unskilled); <u>Campbell v. Astrue</u>, 525 F.Supp.2d 1256, 1264 (D.Kan. 2007) (second phase findings adequate where ALJ incorporates by

reference plaintiff's testimony regarding demands of the job and exhibits regarding demands of claimant's previous jobs as generally performed in national economy).

Plaintiff also makes the argument that the ALJ's finding that plaintiff could return to his past relevant work is not supported by the evidence. Plaintiff makes an incomplete reference to comments by a disability examiner at p. 107 of the record. The full text of the comments is:

> PRTF [Psychiatric Review Technique Form] for non-severe. RFC [Residual Functional Capacity] for medium work [with] restriction to no overhead lifting. PRW [Past Relevant Work] as a registered nurse is outside parameters of RFC as described. DOT [Dictionary of Occupational Titles] 075.364-010 is M [Medium][with] frequent overhead lifting and SVP [Specific Vocational Preparation] 7. [Claimant] cannot return to past work as generally performed either. However, he can perform other work. Using voc. rule 203.29 [see 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 3] claim is a denial.

(Tr. 107). It should be noted that a different disability examiner concluded that plaintiff could not return to his past relevant work as described, but that he could return to his past relevant work as defined in the Dictionary of Occupational Titles (DOT), with the restriction of no continuous overhead lifting. (Tr. 112). The vocational expert also testified that plaintiff could perform the work of a registered nurse as performed in the national economy. (Tr. 596).

The court finds that there is substantial evidence to support a finding that plaintiff can perform his past relevant work as a

registered nurse, if not as previously performed, then as performed in the national economy.  "Past relevant work" includes plaintiff's particular past relevant job, as well as the type of work plaintiff performed in the past as that work is generally performed in the national economy.  <u>Andrade v. Secretary of Health and Human Services</u>, 985 F.2d 1045, 1051 (10th Cir. 1993).  Substantial evidence supporting plaintiff's ability to perform <u>either</u> his particular past relevant job <u>or</u> plaintiff's former occupation as generally performed throughout the nation, is sufficient to support a denial of a claim for benefits.  <u>Id</u>. at 1051-52.

Finally, the ALJ found in the alternative that a denial of benefits was justified on the basis of his step five analysis.  In other words, the ALJ found that there were jobs existing in significant numbers in the national economy that plaintiff could perform.  (Tr. 35).  Plaintiff has not specifically attacked this finding which provides an alternative basis for denying benefits even if it were determined that plaintiff could not perform his past relevant work.  See <u>Berna v. Chater</u>, 101 F.3d 631 (10th Cir. 1996) (affirming the denial of a benefits claim when plaintiff failed to challenge on appeal an alternative grounds for denying benefits based on step five of the sequential analysis).

V.  CONCLUSION

For the above-stated reasons, the court shall affirm defendant's decision to deny social security benefits.

**IT IS SO ORDERED.**

Dated this 12th day of January, 2009 at Topeka, Kansas.


s/Richard D. Rogers
United States District Judge